**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

NERY ADELI SALGUERO SOSA,

*Petitioner,*

v.

MERRICK B. GARLAND, Attorney
General,

*Respondent.*

No.19-70961

Agency No.
A087-365-423

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted October 17, 2022
San Francisco, California

Filed December 16, 2022

Before: SIDNEY R. THOMAS and MILAN D. SMITH,
JR., Circuit Judges, and GEORGE H. WU,[*] District Judge.

Opinion by Judge Milan D. Smith, Jr.;
Partial Concurrence by Judge Wu

---

[*]The Honorable George H. Wu, United States District Judge for the
Central District of California, sitting by designation.

## SUMMARY[**]

## Immigration

The panel granted in part and denied in part Nery Adeli Salguero Sosa's petition for review of a decision of the Board of Immigration Appeals upholding an immigration judge's denial of asylum, withholding of removal, and protection under the Convention Against Torture, and remanded for further proceedings.

The panel concluded that the BIA erred by failing to conduct cumulative-effect review when assessing Salguero Sosa's evidence of past persecution. The panel explained that *Korablina v. INS*, 158 F.3d 1038 (9th Cir. 1998), and *Guo v. Sessions*, 897 F.3d 1208 (9th Cir. 2018), held that when determining whether a petitioner's past mistreatment rises to the level of persecution, the BIA must apply cumulative-effect review. The panel wrote that cumulative-effect review is essential where a single isolated incident may not rise to the level of persecution, but the cumulative effect of several incidents may constitute persecution. The panel rejected the government's view that *Korablina* and *Guo* were simply substantial-evidence-review decisions in which the court determined, on the basis of the whole record, that any reasonable factfinder would be compelled to disagree with the BIA. Rather, the panel explained that the agency's purported failure to conduct cumulative-effect review is a legal issue that this court reviews de novo.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel concluded that it is evident from the record that the BIA failed to conduct a cumulative-effect review. The panel explained that the IJ analyzed each category of past harm in isolation and found that none individually rose to the level of persecution. In addition, the BIA failed to acknowledge Salguero Sosa's request for cumulative-effect review, and the BIA's analysis did not demonstrate that it took a cumulative look at the various instances of harm Salguero Sosa asserted. Instead, the BIA followed in the IJ's footsteps, ticking off each of Salguero Sosa's categories of harm on an individual basis and finding that each amounted only to discrimination. The panel remanded for the agency to apply the correct legal framework to Salguero Sosa's asylum claim.

Because withholding of removal, like asylum, requires a showing of future persecution and employs a past-persecution rebuttable presumption, the panel explained that its cumulative-effect holding applies to Salguero Sosa's withholding of removal claim as well. The panel held that the BIA also erred by applying asylum's heightened "at least one central reason" nexus requirement to Salguero Sosa's withholding of removal claim, rather than the correct "a reason" standard. The panel therefore remanded for the BIA to apply the correct legal framework for evaluating the withholding of removal nexus requirement.

Finally, the panel concluded that substantial evidence supported the BIA's conclusion that the Guatemalan government would not acquiesce in any torture Salguero Sosa might suffer. The panel explained that although Salguero Sosa's proffered evidence might suggest some government disregard or animus toward Salguero Sosa, in particular, or to individuals in his proposed social group generally, it did not meet the high bar of compelling the

conclusion that the Guatemalan government would acquiesce in Salguero Sosa's torture.

Judge Wu concurred in the majority's remand of Salguero Sosa's withholding of removal claim, and its denial of the petition as to his CAT claim. However, Judge Wu did not join in the majority's remand of Salguero Sosa's asylum claim. Judge Wu disagreed that Circuit precedent already requires the BIA to conduct cumulative-error review, or that the failure to conduct such a review warrants remanding the matter back to the BIA. Judge Wu also pointed out that without some description as to the elements, factors, or steps of such an analysis, it is uncertain what that review would entail and how it is to be (or could be) conducted in the present case.

**COUNSEL**

Sylvia L. Esparza (argued), Law Office of Sylvia L. Esparza, Las Vegas, Nevada, for Petitioner.

Stephen P. Finn (argued), Senior Trial Attorney; Mary J. Candaux, Assistant Director; Brian M. Boynton, Principal Deputy Assistant Attorney General; United States Department of Justice, Civil Division; Washington, D.C.; for Respondent.

# OPINION

M. SMITH, Circuit Judge:

Nery Adeli Salguero Sosa, a citizen of Guatemala who suffers from dwarfism and who advocated in Guatemala for increased legal protections for dwarfs, petitions our court to review the Board of Immigration Appeals' decision denying him asylum, withholding of removal, and Convention Against Torture (CAT) relief. We grant the petition in part, deny in part, and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

Salguero Sosa is a native and citizen of Guatemala. He lawfully entered the United States but overstayed his nonimmigrant visa. When charged as removable pursuant to 8 U.S.C. § 1227(a)(1)(B), he conceded removability and applied for asylum, withholding of removal, and CAT relief.

Before the Immigration Judge (IJ) and Board of Immigration Appeals (BIA), Salguero Sosa contended—in support of his asylum and withholding of removal claims—that he suffered past persecution and would suffer future persecution on account of his political opinion and his membership in two particular social groups (PSGs): dwarfs in Guatemala and human rights defenders in Guatemala. Though Salguero Sosa primarily relied on showing past persecution (and the rebuttable presumption it triggers), he alternatively argued that he could show future persecution because his two alleged PSGs are also disfavored groups— a related but separate showing. In asserting his CAT claim, Salguero Sosa did not argue that he suffered past torture and instead argued only that it was more likely than not that he would be tortured with the acquiescence of the government

if he were removed to Guatemala.

## I.     Salguero Sosa's Alleged Past Persecution

In presenting his asylum and withholding of removal claims, Salguero Sosa testified about several categories of mistreatment that he contends amounted to past persecution, namely: (1) educational mistreatment by his father, peers, and teachers; (2) employment barriers, including discriminatory hiring practices, denial of raises and career-advancement opportunities, and derogatory comments made by his superiors; (3) several assaults and robberies, including one in which he was "brutally" beaten at gunpoint; (4) death threats from anonymous callers; (5) social mistreatment, including his then-girlfriend's family forcing her to have an abortion because they did not want her to risk having a dwarf child; and (6) his and his brother's treatment at a state-run hospital where his brother, who was also a dwarf, died due to what Salguero Sosa contends was inadequate medical care.

## II.     BIA Proceedings

Salguero Sosa's petition for review comes to us with an extended procedural history, wherein both the IJ and BIA have each issued two prior decisions. Collectively, those decisions denied Salguero Sosa's application for asylum, withholding of removal, and CAT relief.

The BIA denied Petitioner asylum because it determined that he did not suffer harm that rose to the level of past persecution and that, in any event, his political opinion was not "at least one central reason" for any past persecution. It also held that Salguero Sosa did not have a well-founded fear of future persecution because he was not a member of a disfavored group. The BIA rejected Petitioner's

withholding of removal claim on the view that since his asylum claim was denied, his withholding of removal claim necessarily failed. The BIA denied Petitioner's CAT claim, determining that Salguero Sosa failed to establish that the government would acquiesce in any torture to which he would be subjected if removed to Guatemala. Salguero Sosa timely filed a petition for review before this court.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction pursuant to 8 U.S.C. § 1252. Where the BIA affirms the IJ "and also adds its own reasoning, we review the decision of the BIA and those parts of the IJ's decision upon which it relies." *Duran-Rodriguez v. Barr*, 918 F.3d 1025, 1027–28 (9th Cir. 2019). We review legal questions *de novo*. *See, e.g.*, *Mendoza-Garcia v. Garland*, 36 F.4th 989, 993 (9th Cir. 2022). And we review the factual determinations underlying denials of CAT relief for substantial evidence. *See, e.g.*, *Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020). Under that "highly deferential" standard, we must accept the BIA's factual findings as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* (quoting 8 U.S.C. § 1252(b)(4)(B)).

## ANALYSIS

### I. Asylum

Salguero Sosa challenges the BIA's denial of asylum on the grounds that the BIA erred by (1) failing to conduct cumulative-effect review when assessing past persecution; (2) concluding that his alleged persecution lacked a nexus to his political opinion; and (3) concluding that he was not a member of a disfavored group when assessing whether he would experience future persecution. We agree with

Salguero Sosa's first argument, grant the petition for review as to asylum, and remand for further proceedings consistent with this opinion.

## A.  Cumulative-Effect Review

The BIA erred by failing to conduct cumulative-effect review when assessing Salguero Sosa's evidence of past persecution.  To be eligible for asylum, a petitioner must demonstrate a "well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Sharma v. Garland*, 9 F.4th 1052, 1059 (9th Cir. 2021) (quoting 8 U.S.C. § 1101(a)(42)(A)).  A petitioner can satisfy this burden by showing past persecution, which gives rise to a rebuttable presumption of future persecution.  *Id.* at 1060; *see* 8 C.F.R. § 208.13(b)(1).

We have previously held that when determining whether a petitioner's past mistreatment rises to the level of persecution, the BIA must apply cumulative-effect review.  *See, e.g.*, *Sharma*, 9 F.4th at 1061 ("The key question is whether, looking at the cumulative effect of all the incidents that a petitioner has suffered, the treatment he received rises to the level of persecution." (cleaned up)); *Ahmed v. Keisler*, 504 F.3d 1183, 1194 (9th Cir. 2007) ("Where an asylum applicant suffers [physical harm and threats] on more than one occasion . . . , the cumulative effect of the harms is severe enough that no reasonable fact-finder could conclude that it did not rise to the level of persecution."); *Krotova v. Gonzales*, 416 F.3d 1080, 1087 (9th Cir. 2005) ("The combination of sustained economic pressure, physical violence and threats . . . , and the restrictions on Petitioner's ability to practice her religion cumulatively amount to persecution."); *Korablina v. INS*, 158 F.3d 1038, 1044 (9th

Cir. 1998) ("Persecution may be found by cumulative, specific instances of violence and harassment toward an individual and her family members . . . .").

Cumulative-effect review is essential where "[a] single *isolated incident* may not rise to the level of persecution, but *the cumulative effect of several incidents* may constitute persecution." *Korablina*, 158 F.3d at 1044 (cleaned up) (emphasis added) (quoting *Singh v. INS*, 94 F.3d 1353, 1358 (9th Cir. 1996)). Two of our decisions illustrate this principle.

The first is *Korablina*. There, the IJ found that Korablina, a Jewish Ukrainian woman, had suffered a "serious [form] of discrimination" but "her numerous experiences did not amount to persecution." *Id.* Korablina's past-persecution showing was based on suffering one physical attack; observing her boss (who was also Jewish) be severely beaten and eventually "disappeared"; receiving threatening phone calls; and having her workplace ransacked. *Id.* at 1044–45. After stating the above legal rule, we declined to decide whether any of Korablina's experiences individually amounted to persecution. Instead, we held that the BIA's denial of relief lacked substantial evidence because "*[c]umulatively*, the experiences suffered by Korablina compel the conclusion that she suffered persecution." *Id.* at 1045 (emphasis added).

The second is *Guo v. Sessions*, 897 F.3d 1208 (9th Cir. 2018). There, a Christian Chinese citizen contended that he had suffered past persecution. *Id.* at 1213. Specifically, Guo testified about a police beating; a short detention; and a requirement that he report to the police each week. *Id.* at 1211. As in *Korablina*, we concluded that we "need not decide whether Petitioner's beating *alone* amounted to

persecution because his asylum claim is also premised on his release conditions" and, when we "consider[ed] the record *as a whole*," a finding of persecution was compelled. *Id.* at 1215–17 (emphasis added).

The government argues that these cases do not establish a legal rule requiring cumulative-effect review. In the government's view, *Korablina* and *Guo* are simply substantial-evidence-review decisions in which we determined, on the basis of the whole record, that any reasonable factfinder would be compelled to disagree with the BIA. We reject the government's limited, fact-bound reading of these decisions for two reasons.

First, the structure of *Korablina* and *Guo* undermines the government's reading. *Korablina*, for instance, took a textbook rule-application-conclusion approach to the issue of whether the petitioner had suffered past persecution. We first described the governing legal rule, *Korablina*, 158 F.3d at 1044 ("Persecution may be found by cumulative, specific instances of violence and harassment . . . ."), and then applied that rule to Korablina's testimony, *id.* at 1044–45 ("Cumulatively, the experiences suffered by Korablina compel the conclusion that she suffered persecution."). The bottom-line factual conclusion (that substantial evidence did not support the BIA's finding of no past persecution) necessarily resulted from the application of the legal rule we had stated (that incidents must be evaluated cumulatively).

Secondly, if we accepted the government's argument, our treatment of cumulative-effect error would be an outlier in immigration and administrative law. We review legal issues arising from administrative proceedings *de novo*, including analogous contentions that the BIA applied an incorrect legal framework. *See, e.g.*, *Garcia v. Wilkinson*,

988 F.3d 1136, 1146 (9th Cir. 2021) (nexus); *Zheng v. Ashcroft*, 332 F.3d 1186, 1194–97 (9th Cir. 2003) (government acquiescence).  In such cases, unless remand would be an "idle and useless formality," we remand if the petitioner shows the existence of a legal error.  *Singh v. Barr*, 935 F.3d 822, 827 (9th Cir. 2019) (quoting *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969)).  But under the government's view, petitioners would benefit from showing cumulative-effect error only if they present the rare case—as in *Korablina* and *Guo*—where the record is so factually overwhelming that it is appropriate to outright grant relief instead of remanding for the agency to apply the correct legal framework in the first instance.  We see no reason for treating Petitioner's raising a cumulative-effect error differently than we treat other petitioners' assertion of legal error.

Accordingly, we hold that the BIA must conduct a cumulative-effect review when assessing a petitioner's claim of past persecution and that the agency's purported failure to do so is a legal issue we decide *de novo*.[1]

Turning to the case before us, it is evident from the record that the BIA failed to conduct a cumulative-effect review.  The IJ analyzed each category of past harm in isolation and found that none individually rose to the level of persecution.  Indeed, when summarizing his findings, the IJ expressly stated that he "evaluate[d] the nature of *each claim* the respondent presents in support" of past persecution

---

[1] To preserve such an argument before this court, petitioners must, of course, exhaust their remedies before the BIA.  *See, e.g.*, *Bare v. Barr*, 975 F.3d 952, 960 (9th Cir. 2020).  Here, there is no contention of waiver, as Salguero Sosa squarely raised his cumulative-effect argument on appeal to the BIA.

and concluded that "in *every instance* what the respondent may have experienced was nothing greater than discrimination focused on him."

On appeal to the BIA, Salguero Sosa challenged the IJ's siloed evaluation of his past-persecution evidence, but the BIA failed to grapple with this argument. The BIA nowhere acknowledged Salguero Sosa's request for cumulative-effect review, nor did its analysis ever demonstrate that the BIA took a cumulative look at the various instances of harm Salguero Sosa asserted. Instead, the BIA followed in the IJ's footsteps, ticking off each of Salguero Sosa's categories of harm on an individual basis and finding that each amounted only to discrimination.

The BIA erred by failing to conduct a cumulative-effect review. We thus grant Salguero Sosa's petition for review as to asylum and remand to the agency to apply the correct legal framework to Petitioner's asylum claim. We do not reach Salguero Sosa's substantial-evidence arguments about the BIA's nexus[2] and disfavored-group determinations. Because we grant the petition as to asylum and the BIA's resolution of the past-persecution issue on remand may affect those two related issues, it would be inappropriate for us to address them now.[3]

---

[2] We do, however, note that, while the IJ and BIA made factual findings about political-opinion nexus, it is unclear whether they ever analyzed whether Salguero Sosa could establish a nexus with his membership in either alleged PSG.

[3] To the extent the partial concurrence suggests that we tacitly endorse these determinations and "leave[] [them] intact," we clarify that we do no such thing. As mentioned, the BIA's resolution of the antecedent past-persecution issue could lead the BIA to reach materially different determinations on these subsequent issues. For example, the BIA's

## II.   Withholding of Removal

Salguero Sosa challenges the BIA's denial of withholding of removal by (1) raising the same argument he made in his claim for asylum regarding cumulative-effect review; and (2) arguing that the BIA erred by applying asylum's heightened nexus requirement.  We agree with Salguero Sosa on both arguments, grant the petition for review as to withholding of removal, and remand for further proceedings consistent with this opinion.

### A.  Cumulative-Effect Review

The cumulative-effect requirement articulated respecting asylum applies with equal force to Salguero Sosa's withholding of removal claim.  Withholding of removal requires a substantially similar (though not identical) showing as asylum.  "The Attorney General must, in general, withhold removal of an alien if the alien's life or freedom would be threatened 'because of the alien's race, religion, nationality, membership in a particular social group, or political opinion.'" *Barajas-Romero v. Lynch*, 846 F.3d 351, 356 (9th Cir. 2017) (quoting 8 U.S.C. § 1231(b)(3)(A)).  Petitioners meet this burden if they show

finding of no political-opinion nexus looked only at two assaults about which Salguero Sosa testified; accordingly, if the BIA on remand were to find that cumulatively Salguero Sosa suffered persecution, then the scope of that persecution may require a new nexus analysis.  Similarly, if the BIA finds past persecution and the government fails to rebut the presumption that finding triggers, then any disfavored-group analysis would be unnecessary.  We, of course, express no view on how the BIA should resolve these issues on remand.  Moreover, in the event the BIA reaches substantially similar nexus and disfavored-group determinations on remand, Salguero Sosa will be able to seek judicial review without any law-of-the-case effect flowing from this decision regarding those issues.

that they have a "clear probability of persecution," *Aden v. Wilkinson*, 989 F.3d 1073, 1085–86 (9th Cir. 2021) (quoting *Korablina*, 158 F.3d at 1045), and their persecution has a nexus to one of the five enumerated categories, *Bajaras-Romero*, 846 F.3d at 357; 8 C.F.R. § 208.16(b). A finding of past persecution triggers a rebuttable presumption that the petitioner will suffer future persecution. *Aden*, 989 F.3d at 1086; 8 C.F.R. § 208.16(b)(1).

Because withholding of removal, like asylum, requires a showing of future persecution and employs a past-persecution rebuttable presumption, our cumulative-effect holding applies to Salguero Sosa's withholding of removal claim as well. Though withholding of removal and asylum have different burdens of proof, the substantive definition of what constitutes past persecution is the same. *See, e.g.*, *Korablina*, 158 F.3d at 1043–46. The BIA, therefore, erred and we remand for it to apply the correct legal framework in evaluating past persecution.

### B. Nexus

As the government concedes, the BIA also erred by applying an incorrect nexus requirement to Salguero Sosa's withholding of removal claim.[4] The nexus requirement for withholding of removal is less demanding than that for asylum. In asylum cases, petitioners must show that one of the five enumerated categories is "at least one central reason" for their persecution. *Barajas-Romero*, 846 F.3d at 358 (quoting 8 U.S.C. § 1158(b)(1)(B)(i)). For withholding

---

[4] Though we decline to reach Salguero Sosa's fact-intensive substantial-evidence challenge to the BIA's nexus finding, we reach this issue because it is an independent legal error unmoored from the BIA's factfinding on remand.

of removal, by contrast, petitioners need only show that one of the five enumerated categories is "a reason" for their persecution. *Id.* (quoting 8 U.S.C. § 1231(b)(3)(C)). "The phrase 'a reason' includes weaker motives than 'one central reason.'" *Id.* at 359.

Here, the BIA applied the heightened "at least one central reason" nexus requirement to Salguero Sosa's withholding of removal claim. The BIA, therefore, erred and we remand for it to apply the correct legal framework for evaluating withholding of removal's nexus requirement.

## III. CAT Relief

Salguero Sosa challenges the BIA's denial of CAT relief by attacking, on substantial-evidence grounds, the agency's conclusion that he would not be tortured with the acquiescence of the Guatemalan government.

To qualify for CAT relief, an applicant "must establish that 'it is more likely than not that he or she would be tortured if removed to the proposed country of removal.'" *Garcia-Milian v. Holder*, 755 F.3d 1026, 1033 (9th Cir. 2014) (quoting 8 C.F.R. § 208.16(c)(2)). Torture is "more severe than persecution," *Davila v. Barr*, 968 F.3d 1136, 1144 (9th Cir. 2020) (quoting *Guo*, 897 F.3d at 1217), and requires the infliction of "an extreme form of cruel and inhuman treatment," 8 C.F.R. § 208.18(a)(2). Of particular significance here, "the torture must be 'inflicted by or at the instigation of or with the consent or acquiescence of a public official acting in an official capacity or other person acting in an official capacity.'" *Garcia-Milian*, 755 F.3d at 1033 (quoting 8 C.F.R. § 208.18(a)(1)).

Substantial evidence supports the BIA's conclusion that the Guatemalan government would not acquiesce in any

torture Salguero Sosa might suffer. In attempting to rebut this finding, Salguero Sosa points to four categories of evidence. Though Petitioner's proffered evidence might suggest some government disregard or animus toward Salguero Sosa in particular or dwarfs generally,[5] it does not meet the high bar of compelling the conclusion that the Guatemalan government would acquiesce in Salguero Sosa's torture.

First, Salguero Sosa points to his testimony that a state-run hospital allegedly caused the death of his brother (who was also a dwarf) and that the director of that hospital allegedly threatened Salguero Sosa when he complained. However, the IJ found that there was "nothing in the evidentiary record to substantiate" Salguero Sosa's testimony about what occurred at the hospital—other than the fact that Salguero Sosa had an older brother who died while being treated for a lung infection. The IJ further found that there was "no reliable indication whatsoever" that Salguero Sosa was "targeted for harm in Guatemala by members of the medical arts community."

Second, Salguero Sosa relies on past retaliation by the Guatemalan government against human rights advocates. However, the BIA found that such past retaliation was not as broadly practiced as Salguero Sosa contends. The agency found that government retaliation was directed mostly "toward groups that investigate land disputes or natural resources"; that "most human rights defenders were able to operate without restrictions"; and that "there was insufficient

---

[5] We express no opinion on how this evidence relates to asylum and withholding of removal showings, including PSG nexus and membership in a disfavored group.

evidence of authorities targeting human rights defenders of the disabled."

Third, Salguero Sosa argues that the timing of death threats made to him and assaults he suffered—after media appearances critical of the government and during an election year—show that the government would acquiesce in his torture. Fourth, Salguero Sosa points to a statement by a public official—made in the context of a legislative debate over a proposed disability law—that "disabled people only constitute an expense for the country." While these two latter categories of evidence might support an inference of government animus, they do not overcome our "highly deferential" review of BIA's factual findings in which we reverse only if "any reasonable adjudicator would be compelled to conclude to the contrary." *Nasrallah*, 140 S. Ct. at 1692 (quoting 8 U.S.C. § 1252(b)(4)(B)). Therefore, substantial evidence supports the BIA's determination that Salguero Sosa would not, with the acquiescence of the government, be subjected to torture, and his CAT claim fails

## CONCLUSION

For the foregoing reasons, the petition for review is **GRANTED IN PART, DENIED IN PART, and REMANDED**. Each party shall bear its own costs for this petition for review. *See* Fed. R. App. P. 39(a)(4), (b); 28 U.S.C. § 2412(a)(1).

---

WU, District Judge, concurring in part:

I concur in the majority opinion's ("Opinion") remand of Sosa's withholding of removal claim and denial of his application for protection under the Convention Against

Torture. However, I am unable to join in the majority's remand of Sosa's asylum claim based upon alleged past persecution in Guatemala.

## I.

On January 24, March 10, and May 20, 2014, hearings before the immigration judge ("IJ") were conducted as to whether Sosa qualified for relief from removal. Evidence was presented and the IJ fully considered all of the following areas which Sosa proffered to establish past persecution due to his dwarfism and/or human rights advocacy: (1) his childhood experiences; (2) educational adversities[1] (*i.e.*, his initially not being allowed to attend any school,[2] the bullying he encountered from his fellow students, and the lack of support from some teachers); (3) employment barriers due to his dwarfism;[3] (4) his having been a victim of crimes in Guatemala (*e.g.*, his being mugged on a number of occasions);[4] (5) death threats due to his advocating for persons diagnosed with dwarfism;[5] (6) the medical care

---

[1] Sosa did attend grade school, high school, and eventually obtained two college degrees.

[2] The earliest impediment was his father's objections to enrolling him in school because of his dwarfism.

[3] Although he experienced difficulties throughout his working career due to his dwarfism, Sosa was able to obtain numerous jobs including a supervisory position at a hotel and being hired as a regional manager for a security company, plus he was certified as a public accountant.

[4] The IJ concluded that the various crimes all appeared to be theft-related and that, while Sosa may have been seen by the attackers as a convenient target because of his diminished stature, it was not part of a pattern or practice of persecution directed at him.

[5] There is no evidence in the record that any person who made a death threat actually attempted to act on it.

received by his brother (who also was a dwarf and who died after seven days of hospitalization for a lung infection);[6] and (7) social mistreatment.[7]  The IJ concluded that Sosa was not "eligible to receive asylum" because "the Immigration Court has gone on to recognize that in every instance what [Sosa] may have experienced was nothing greater than discrimination focused on him . . . . that discrimination is less provocative than persecution . . . . [and i]t follows that [Sosa] was not previously persecuted in Guatemala."

---

The IJ discussed two incidents where Sosa claims to have been assaulted and robbed by persons who, during the crimes, commented on his advocacy endeavors.  The IJ noted that Sosa's testimony at the hearing was "at variance" in certain material areas with the lengthy reports which he provided to the police following the incidents; especially where he failed to inform the police of the alleged comments made by his attackers or his belief that the attacks were due to his advocacy activities.  Likewise, the Board of Immigration Appeals also observed that Sosa had not mentioned those comments/threats in either his original or amended asylum declarations even though he was represented by counsel at the time.

[6] While Sosa believes that his brother died due to the medical indifference of hospital staff arising from their antipathy to his brother's dwarfism, the IJ found that Sosa had no evidence to support his suspicions that his brother had received inadequate medical treatment or that any purported medical malpractice stemmed from anti-dwarf animus.

[7] Sosa testified as to his having a romantic relationship with a woman of normal stature, whose family disapproved of the liaison.  Eventually, the woman's mother pressured her daughter into breaking off the relationship and aborting the child which she was then-carrying.  While recognizing the obvious pain that Sosa suffered as a result of that situation, the IJ nevertheless found that the incident did not establish persecution but rather constituted discrimination against him by the mother.

The Board of Immigration Appeals ("BIA"), after reviewing incidents raised by Sosa, upheld the IJ's determination that he had not established past persecution. However, the BIA remanded the issue of whether Sosa had a well-founded fear of persecution because the IJ never made findings as to whether Sosa "is a member of a 'disfavored group' or whether [he] is at an 'individualized risk of being singled out for persecution.'"

Additional testimony was taken before the IJ on March 27, 2017.  As to the issue of whether there was a pattern or practice of persecution against dwarfs in Guatemala, the IJ held: "[t]he record here does not demonstrate widespread brutality against dwarves or that there is any criminalization due to one's stature or disability in Guatemala.  The record simply points to certain societal discrimination factors especially related to employment which this Court is unable to find is a pattern or practice of persecution against dwarves."  As to the issue of whether there is a pattern or practice of persecution against "human rights defenders" in Guatemala, the IJ found: "[t]he record here indicates that the Guatemalan government works with many human rights [organizations] and many operate in the country without restriction.  The Country Report states that most of the violence that was targeted against human rights groups dealt with groups investigating land disputes or exploitation of natural resources.  [Sosa] has failed to point to any violence or threats of harm towards his specific organization, or any organization that is lobbying on behalf of the disabled in Guatemala."  The IJ concluded that Sosa "has failed to offer any evidence showing that a pattern or practice of persecution exists against either dwarfs or human rights defenders in Guatemala."  As to whether Sosa had shown that he himself was singled out for persecution because of

his being a dwarf and/or human rights defender, the IJ held that he had not done so, relying primarily upon the agency's previous determination that Sosa "did not establish that he was subjected to past persecution in Guatemala."

The BIA agreed with the IJ's factual findings and concluded, *inter alia*, that: (1) as to Sosa's being a dwarf in Guatemala, "the past harm [he] encountered was discrimination, not persecution," and (2) as to Sosa's being an advocate for persons with restricted growth, "there is insufficient evidence that persons advocating for dwarves or the disabled are singled out for harm by the government or by persons whom the government is unable or unwilling to control."

## II.

As to the denial of asylum, the Opinion agrees with Sosa's first argument that the BIA erred in failing to conduct a "cumulative-effect" review when assessing the incidents of his alleged past persecution, and remands the matter for "further proceedings consistent with this opinion." The majority goes on to state: "We have previously held that when determining whether a petitioner's past mistreatment rises to the level of persecution, the BIA *must* apply cumulative-effect review." (Emphasis added).

The Opinion does not indicate that the IJ or BIA failed to consider all of the relevant evidence proffered by Sosa; nor does it conclude that the IJ or BIA was incorrect in deciding that Sosa's individual incidents of mistreatment were only acts of discrimination and/or harassment, which did not rise to the level of persecution.[8] While the majority

---

[8] As observed in *Sharma v. Garland*, 9 F.4th 1052 (9th Cir. 2021):

remands the matter to the BIA for a "cumulative-effect review," it is not exactly clear what such a review would entail, and the Opinion does not offer any hints.

## III.

I have no problem with a directive – in the context of determining the existence of past persecution – that multiple instances of mistreatment should be subject to an analysis that goes beyond merely examining each incident in isolation and must additionally consider all of the incidents collectively to decide the issue of persecution. *See Guo v. Ashcroft*, 361 F.3d 1194, 1203 (9th Cir. 2004) ("We look at the totality of the circumstances in deciding whether a finding of persecution is compelled."). However, the Opinion states that the Circuit already has a mandate which requires "that when determining whether a petitioner's past mistreatment rises to the level of persecution, the BIA must apply cumulative-effect review." I respectfully disagree.

First, there is a question as to whether the Circuit has previously articulated such a rule. All of the cases cited in the Opinion for that proposition have not expressly done so.

---

"Persecution," we have repeatedly held, "is an extreme concept that means something considerably more than discrimination or harassment." . . .

Because it is an extreme concept, persecution "does not include every sort of treatment our society regards as offensive." . . . This means that "some circumstances that cause petitioners physical discomfort or loss of liberty do not qualify as persecution, despite the fact that such conditions have caused the petitioners some harm." . . . Simply stated, "not all negative treatment equates with persecution."

*Id.* 1060-61 (cleaned up and citations omitted).

Rather, the cases merely reference (or are variations of) previous holdings that state: (1) "[a] single isolated incident may not 'rise to the level of persecution, [but] the cumulative effect of several incidents may constitute persecution,'" *Korablina v. INS*, 158 F.3d 1038, 1044 (9th Cir. 1998) (quoting *Singh v. INS*, 94 F.3d 1353, 1358 (9th Cir. 1996)); and/or (2) there will be cases where "[t]he key question is whether, looking at the cumulative effect of all the incidents that a Petitioner has suffered, the treatment he received rises to the level of persecution," *Sharma*, 9 F.4th at 1061 (quoting *Singh v. INS*, 134 F.3d 962, 967 (9th Cir. 1998)). There does not appear to be a published case where the Circuit actually held that some sort of established "cumulative-effect review" *must* be applied by the IJ or BIA when determining whether a petitioner's past mistreatment rises to the level of persecution, and that the failure to conduct such a review warrants remanding the matter back to the BIA.

Second, if the rule proposed in the Opinion is enacted, what will that mean as a practical matter? Can the IJ and/or BIA, after examining each of the proffered incidents of mistreatment, simply announce that "the cumulative effect of [petitioner's] alleged harm[s] do[] not rise to the level of persecution."[9]  *See, e.g., Singh v. Garland*, 48 F.4th 1059, 1065 (9th Cir. 2022).  Or will they be required to articulate the details of their cumulative-effect review.  Further, will a

---

[9] For example, would it have sufficed in this case if, at the end of the examination of the incidents delineated in the record, the IJ and/or BIA had said something to the effect that: "the instances of mistreatment raised by the petitioner simply amount to acts of discrimination and/or harassment which individually *and in the aggregate* do not constitute past persecution."

failure to sufficiently discuss the particulars of the cumulative-effect review automatically mean that the matter must be remanded to the agency for further proceedings?

Third, if a hard-and-fast rule requiring a "cumulative-effect review" is adopted, shouldn't there be some description as to what are the elements, factors, or steps of such an analysis?  The majority does not attempt any such exposition; nor do any of the cases cited in the Opinion contain such delineation.[10]   Thus, the Opinion is totally opaque regarding what the BIA is supposed to do on remand. Further, the Opinion does not overturn but leaves intact the IJ's and BIA's determinations: (1) that each of the individual incidents raised by Sosa only amount to acts of discrimination or harassment and not persecution; and (2) that Sosa has not shown a pattern or practice of persecution against dwarfs or disability advocates in Guatemala.

One might surmise that the Opinion is calling for a reweighing of the evidence taking a gestalt approach as to the issue of whether the individual acts of discrimination/harassment cited by Sosa collectively reach a

---

[10] The closest description of what such analysis might entail is contained in *Singh*, 134 F.3d at 967-68, which describes the "inquiry [as being] heavily fact-dependent, and is perhaps best answered by comparing the facts of Petitioner's case with those of similar cases."  However, if the analysis boils down to a comparison between the petitioner's facts and those in similar cases where a decision has been rendered as to whether persecution was (or was not) established, then "cumulative-effect review" is a misnomer and should rather be labelled a "comparative review."  Further, would the petitioner have the burden of locating and presenting those similar cases to the agency?

critical mass which can be deemed persecution.[11]   How exactly that determination is to be made remains a mystery. But unless the cumulative-effect analysis as to past persecution is tethered to some standards or criteria, it may wind up being rudderless and entirely subjective, akin to Justice Stewart's famous non-test for obscenity – "I know it when I see it." *Jacobellis v. Ohio*, 378 U.S. 184, 197 (1964) (Stewart, J., concurring).

## IV.

I do not join in the remand of Sosa's asylum claim based upon alleged past persecution because: (1) I would not find that this Circuit has previously demanded a cumulative-

---

[11] But it should be remembered that this entire process is being conducted under a highly deferential substantial evidence review.  As observed in *Sharma*:

> We review for substantial evidence the BIA's determination that a petitioner has failed to establish eligibility for asylum or withholding of removal . . . . [and] the BIA's particular determination that a petitioner's past harm "do[es] not amount to past persecution."

> Because "the law entrusts the agency to make the basic" eligibility determinations, "[t]he substantial evidence standard of review is 'highly deferential' to the [BIA]."  Consistent with this level of deference, we may grant a petition only if the petitioner shows that the evidence "*compels* the conclusion" that the BIA's decision was incorrect.  In other words, we ask not whether "a reasonable factfinder *could* have found" the harm the petitioner experienced "sufficient to establish persecution," but whether "a factfinder would be compelled to do so."

9 F.4th at 1060 (cleaned up and citations omitted).

effect review in all such cases with the penalty of remand in its absence; and (2) it is uncertain what that review would entail and how it is to be (or could be) conducted in the present case.